Argued and submitted April 27, affirmed on petition and cross-petition
November 8, 2006

In the Matter of the Compensation of
Geoffrey R. Pickett, Claimant.

SUHOR INDUSTRIES, INC.,
*Petitioner - Cross-Respondent,*

*v.*

Geoffrey R. PICKETT,
*Respondent - Cross-Petitioner.*

03-05645, 03-5278; A126508

147 P3d 359

Ron Holloway argued the cause for petitioner - cross-respondent. On the briefs were Deborah L. Sather, Rebecca Watkins, and Sather, Byerly & Holloway.

Gordon S. Gannicott argued the cause for respondent - cross-petitioner. With him on the briefs was Hollander, Lebenbaum & Gannicott.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Yraguen, Senior Judge.*

YRAGUEN, S. J.

* Yraguen, S. J., *vice* Ceniceros, S. J.

## YRAGUEN, S. J.

Employer seeks review of an order of the Workers' Compensation Board (board) upholding an award of scheduled permanent partial disability (PPD) for claimant's skin condition. Claimant cross-petitions for review, contending that the board erred in overturning his award for unscheduled permanent disability. We review the board's findings for substantial evidence, ORS 183.482(8)(c), and its legal conclusions for errors of law. ORS 183.482(8)(a). We affirm on the petition and on the cross-petition.

Claimant worked for employer between September 2001 and August 2002. He used epoxy glue to glue plastic sheets to the insides of concrete burial vaults. Claimant developed a rash on both hands and arms and on his face. Dr. Norris, claimant's attending physician, examined claimant and opined that claimant had an allegeric reaction to epoxy resin:

"It appears he was sensitized to the epoxy resin in the first few months of his job. I would expect this allergic reaction would persist indefinitely. * * * I would expect [claimant] to do well in a job with [employer] that has no exposure to epoxy resin. We know that epoxy resin can penetrate gloves; so wearing gloves while working with the adhesive would not protect him from breaking out; he needs to completely avoid any exposure to this product."

Claimant was taken off work with employer and still has not returned to work. Employer accepted a disabling claim for "dermatitis of hands, face and arms due to epoxy resin exposure during the period September 10, 2001 through August 1, 2002."

In January 2003, Dr. Dordevich examined claimant at employer's request. Dordevich found that claimant's face was clear of lesions and that the skin on claimant's hands was well healed, although subtle changes were present over some of the joints of his right hand. Dordevich diagnosed "contact dermatitis secondary to exposure to epoxy resin." He concluded that claimant was medically stationary and that there were no permanent residuals due to the work exposure. Dordevich explained that, as long as claimant was not

exposed to the chemical in the future, no skin problems would be expected. Norris concurred in Dordevich's findings and recommendations.

Employer issued a notice of closure in March 2003, awarding claimant temporary disability, but no permanent disability. Claimant requested reconsideration. Dr. Harris, a medical arbiter, examined claimant. In describing the history of claimant's condition, Harris noted that patch testing had shown that claimant had "an immunologic reaction to epoxies." He reported that, despite the current lack of exposure to epoxies or other chemicals, claimant continues to have problems with the skin on his hands. By clinical examination, Harris found continued symptoms of dermatitis on claimant's fingers and on the back of each hand. Harris diagnosed "allergic contact dermatitis" and explained that any future exposure to epoxy glues or products containing that family of chemicals would result in an outbreak of allergic contact dermatitis, which would cause cracking, peeling, redness, and blisters. Harris stated that such responses would restrict claimant from most work activities with employer. With respect to classification of claimant's permanent impairment, Harris opined that claimant "best fits into class 3." He explained:

"[Claimant] has signs and symptoms of a skin disorder (abnormalities on exam, and abnormal patch testing to epoxies). Continuous treatment is required—total avoidance of epoxy glues and resins; and I believe there is moderate limitation in the performance of work activities. By this I am referring to his exclusion from any kind of work where epoxy resins and glues are used. These are common industrial components, and there are a variety of manufacturing processes, in a number of different industries, where he must avoid all contact with this family of chemicals."

The Appellate Review Unit (ARU) issued an order on reconsideration awarding claimant 38 percent scheduled permanent disability for each hand under OAR 436-035-0110(6)(c), consistent with Harris's determination that claimant suffers from a Class 3 dermatological condition.[1] Also, based on

---

[1] OAR 436-035-0110(6) provides:

"Dermatological conditions, including burns, which are limited to the arm, forearm, hand, fingers, or thumb are rated according to the body part affected.

Harris's statements that claimant had developed an "immunologic reaction" to his exposure to epoxy resin, the ARU awarded claimant 21 percent unscheduled permanent disability, under OAR 436-035-0450,[2] for impairment to his immune system. Employer requested a hearing.

The administrative law judge (ALJ) upheld the order on reconsideration, and employer appealed. In its order on review, the board upheld the ALJ's order with respect to the award of scheduled permanent partial disability, but overturned the award of unscheduled permanent partial disability. The board concluded that Harris's findings regarding the extent of claimant's permanent impairment were based on complete and accurate information and were more persuasive than the opinions of Norris and Dordevich indicating that claimant had no permanent impairment. Citing *Hicks v.*

---

The percentages indicated in the classes below are applied to the affected body part(s), e.g. a Class 1 dermatological condition of the thumb is 3% of the thumb, or a Class 1 dermatological condition of the hand is 3% of the hand, or a Class 1 dermatological condition of the arm is 3% of the arm. Contact dermatitis of an upper extremity is rated in this section unless it is an allergic systemic reaction, which is also rated under OAR 436-035-0450. Contact dermatitis for a body part other than the upper or lower extremities is rated under OAR 436-035-0440. Impairments may or may not show signs or symptoms of skin disorder upon examination but are rated according to the following classes:

"(a) Class 1: 3% for the affected body part if treatment results in no more than minimal limitation in the performance of activities of daily living, although exposure to physical or chemical agents may temporarily increase limitations.

"(b) Class 2: 15% for the affected body part if intermittent treatments and prescribed examinations are required, and the worker has some limitations in the performance of activities of daily living.

"(c) Class 3: 38% for the affected body part if regularly prescribed examinations and continuous treatments are required, and the worker has many limitations in the performance of activities of daily living.

"(d) Class 4: 68% for the affected body part if continuous prescribed treatments are required. The treatment may include periodically having the worker stay home or admitting the worker to a care facility, and the worker has many limitations in the performance of activities of daily living.

"(e) Class 5: 90% for the affected body part if continuous prescribed treatment is required. The treatment necessitates having the worker stay home or being permanently admitted to a care facility, and the worker has severe limitations in the performance of activities of daily living."

[2] OAR 436-035-0450(1) provides that "when exposure to physical, chemical or biological agents has resulted in the development of an immunological response, impairment of the immune system shall be valued as follows: * * * 13 percent when the reaction prevents most work related activities."

*SAIF*, 194 Or App 655, 96 P3d 856, *on recons*, 196 Or App 146, 100 P3d 1129 (2004), and *Khrul v. Foremans Cleaners*, 194 Or App 125, 93 P3d 820 (2004), the board noted that, under the applicable version of *former* OAR 436-035-0007(15) (2004),[3] unless a preponderance of the evidence demonstrates that *different findings by the attending physician* are more accurate, the board is required to accept the medical arbiter's opinion. Reasoning that there was not a preponderance of medical opinion demonstrating that different findings by the attending physician were more accurate, the board relied on Harris's impairment findings and concluded that claimant had established entitlement to a "Class 3" rating under OAR 436-035-0110(6) and scheduled permanent partial disability of 38 percent.

■ On judicial review, employer contends that the board erred in relying on Harris's impairment findings for scheduled permanent partial disability, because the evidence does not support a Class 3 designation of claimant's condition and a preponderance of the medical evidence establishes a different level of impairment. Specifically, employer contends that several of the criteria required for a Class 3 designation under OAR 436-035-0110(6)(c) are not present. Under OAR 436-035-0110(6)(c), a Class 3 designation is appropriate if "regularly prescribed examinations and continuous treatments are required, and the worker has many limitations in the performance of activities of daily living." Employer contends that, despite Harris's classification of claimant's dermatological condition as a Class 3 skin condition, there is no evidence that claimant needs regularly prescribed examinations and continuous treatment or has many limitations in the performance of activities of daily living. We agree with employer that the evidence is slight with respect to at least two of the criteria for a Class 3 skin condition. The difficulty, however, is that the board expressly rejected as unpersuasive

---

[3] At the relevant time, *former* OAR 436-035-0007(15) provided, in part:

"On reconsideration, where a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used."

That provision is now numbered as OAR 436-035-0007(5) (Jan 1, 2005).

the conclusions of Dordevich and Norris, the attending physician, that claimant suffers from *no* permanent impairment, finding that "the record does not persuade us by a preponderance of the evidence that findings made by Dr. Norris or by Dr. Dordevich, with whom she concurred, are more accurate." That finding is supported by substantial evidence. There is no separate impairment rating from claimant's attending physician.[4] There is no contention that the scheduled impairment that Harris rated is not caused by the compensable condition. *See Hicks,* 196 Or App at 151. As we held in *Hicks, former* OAR 436-035-0007(15) required that the medical arbiter's report establish the claimant's level of impairment unless more persuasive medical evidence demonstrates that different findings by the attending physician are more accurate and should be used. 196 Or App at 146. The board found that other medical evidence was not more persuasive than the medical arbiter's opinion, and we conclude that that finding is supported by substantial evidence. Accordingly, we affirm the board's rating of claimant's scheduled permanent impairment.

■    The board also overturned the ARU's award of 21 percent unscheduled permanent partial disability for immunologic impairment under OAR 436-035-0450. Relying on its own precedent, *Woodrow T. Bernard,* 51 Van Natta 1437 (1999), and the text of OAR 436-035-0110(6),[5] the board explained that there is a distinction between "contact dermatitis," which is considered to be a dermatological condition to be rated only under OAR 436-035-0110(6), and an allergic *systemic* reaction, which is to be rated also under OAR 436-035-0450 as an immunologic impairment. The board noted that, although the history portion of Harris's report had described claimant's response to patch tests as an "immunological reaction," Norris, who had performed the testing, had interpreted the results as indicating an "allergy," and had not diagnosed a "immunologic" condition. Reasoning that Harris

---

[4] There are medical reports from two other physicians noting that claimant has a Class 1 skin condition.

[5] OAR 436-035-0110(6) provides, in part, that "[c]ontact dermatitis of an upper extremity is rated in this section unless it is an allergic systemic reaction, which is also rated under OAR 436-035-0450."

had not explained whether the terms "allergic" and "immunologic" are synonymous in the dermatitis context, the board concluded that Harris's opinion was insufficient to support an award of unscheduled permanent partial disability under OAR 436-035-0110 for an impairment to claimant's immune system.

In his cross-petition, claimant contends that the board erred in overturning the award of unscheduled permanent disability. Claimant acknowledges that contact dermatitis of an upper extremity is rated as a scheduled disability only under OAR 436-035-0110(6), unless the claimant has an allergic systemic reaction, in which case, it is also rated under OAR 436-035-0450. Claimant contends that the evidence in this case requires the conclusion that his condition is an allergic systemic reaction. Claimant notes that all physicians have described his condition as an allergic reaction, and he urges the court to take judicial notice that medical dictionaries define "allergy" as an immunologic state. Although we agree with claimant that there is some evidence in support of a finding that claimant's skin condition is an immunologic condition, we conclude that the board's reasonable interpretation of the medical reports supports the board's finding that claimant does not suffer from an immunologic condition. We accordingly affirm the board's order on the cross-petition.

Affirmed on petition and cross-petition.